IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 5:07-cr-42-RS-AK

ROBIN A. HAYES,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 77, Motion to Vacate under 28 U.S.C. § 2255, by

Robin A. Hayes. The Government has filed its response, Doc. 87, and Defendant has filed a

reply. Doc. 97. The motion is therefore in a posture for decision. Having carefully considered

the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

Defendant Hayes was charged in a three-count indictment with (1) credit card fraud, (2)

identification fraud, and (3) aggravated identity theft. Doc. 1. Charles Lammers was appointed

to represent her. Docs. 12 & 15. A few days after Defendant's change of plea was noticed by

the Court, Mr. Lammers filed a motion for hearing regarding Defendant's request for a new

attorney. Doc. 19. The change of plea was reset to follow the hearing.

 At the hearing, Defendant personally advised the Court that the issues with Mr.

Lammers had been "resolved" and that she had acted "too harshly" and "too quickly" in sending

the letter to the Court. Doc. 80. Mr. Lammers agreed that he and Defendant had "resolved the

issues." *Id*. The Court therefore proceeded to the change of plea. During the course of the

colloquy, Defendant acknowledged her right to persist in her not guilty plea and to go to trial and

present witnesses and evidence and agreed that she was waiving those rights by pleading guilty. *Id*. Defendant advised the Court that she had read the factual basis for the plea and that she had had sufficient time to speak with Mr. Lammers about it. *Id*. In the factual basis, Defendant agreed that she "signed a consent to search her residence and her electronic media located in her Greenwood, Florida home." *Id*. While she disputed in open court that she had signed the consent to search her home, she agreed that Mr. Lammers had gotten a "verification done on the signature" and nevertheless stated she had "no problem with pleading guilty...." *Id*. She acknowledged that "what [she had] said and what [she had] signed in this factual basis would be sufficient for a jury to find [her] guilty of the three charges[.]" *Id*. Defendant further stated that she had no complaints about counsel and that he had answered all of her questions. *Id*. The Court therefore found that Defendant's change of plea was freely, knowingly, and voluntarily given after advice of counsel and that there was a sufficient factual basis for the plea. *Id*.

Approximately one month after the change of plea, Defendant moved to withdraw her pleas because she wanted "to contest the legality of the search [of her home] and seizure [of items from the home]...." Doc. 27. Approximately one week later, Defendant, "after consultation with counsel," filed a notice of withdrawal of the amended motion to withdraw guilty plea. Doc. 31. Defendant was subsequently sentenced to 15 months each on Counts One and Two, to run concurrently, and to 24 months on Count Three, to run consecutively to Counts One and Two and to her state court sentence. Doc. 35. She did not appeal her convictions or sentences.

Shortly thereafter, Defendant filed *pro se* motions for return of property and to run her sentences concurrently. Docs. 37 & 39. The motion to run sentences concurrently was denied,

but the motion for return of property was granted in part and denied in part. Docs. 40 & 46.

Defendant appealed the property order, Doc. 50, but later, she voluntarily dismissed the appeal.

Doc. 76. In the interim, Defendant filed motions requesting production of the consent to search

forms which she purportedly signed and an itemized list of seized items. Docs. 66 & 67. In a

lengthy order, the Court denied the motion for production of the consent to search forms,

reminding Defendant that she had previously stated under oath in open court that she did in fact

sign the consent to search forms, that the "signatures on the forms bear a striking resemblance to

Defendant's signatures," that she had been represented by "experienced, appointed counsel who

most likely considered the legality of the search and seizure before [she] entered her guilty

pleas," and that she "did, in fact, plead guilty to the crimes of which she was convicted and

sentenced." Doc. 72. The Court also denied the motion for an itemized list of seized items,

finding, in part, that the motion was "essentially a demand for discovery on a post-conviction,

collateral matter that is unrelated to her conviction or sentence." *Id.* Defendant did not appeal

this order.

The instant motion to vacate followed. Doc. 77. Each ground for relief will be discussed

in turn.

## **DISCUSSION**

1.      "Unlawfully restrained and/or detained."

In this claim, Defendant charges that when she was approached by the investigating

officers outside her place of employment, she was unlawfully restrained or detained by them.

Doc. 77. According to her, the officers held her arms and remained behind her and would not let

her leave even though they advised she was not under arrest. *Id.*

This is precisely the type of claim which is waived by a defendant's entry of a guilty plea. "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea," *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992), or the Court's subject matter jurisdiction can be sustained. *United States v. Betancourth*, 554 F.3d 1329, 1332 (11th Cir. 2009). Examples of non-jurisdictional claims which are not cognizable on a motion to vacate following a guilty plea include "claims regarding Miranda warnings, coerced confessions, perjury, and illegal searches and seizures." *Franklin v. United States*, 589 F.2d 192,194-95 (11th Cir. 1979). Because Defendant's claim of unlawful restraint is non-jurisdictional in nature, and there is nothing in the plea colloquy to suggest that Defendant did not knowingly and voluntarily plead guilty to the charges in the indictment, the instant claim was waived with the entry of her guilty plea and should be denied.

2.      "Illegal search and seizure–violation of the Fourth Amendment."

This claim contesting the officers' search of Defendant's home suffers the same fate. *See Franklin*, 589 F.2d at 195. Furthermore, the issue of consent was raised at the plea hearing and in the factual basis for the plea which Defendant signed. The law is well established that a "guilty plea means something. It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249, 1254 (11th Cir. 1998). In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Based on Defendant's representations at the plea hearing, her continued pressing of the unlawful consent issue is a contention that "in the face of the record [is] wholly incredible."  It should likewise be denied.

      3.        "Fraud on the court."

      This claim is a variation of Claim 2 in that Defendant charges that the consent forms are "fabricated, fraudulent, and/or altered to make it appear as Ms. Hayes signed the forms."  For the reasons stated previously, this claim should be denied.  Defendant voluntarily signed the statement of facts stating that she consented to the search of her home and her computer.  While she denied that was true during the plea colloquy, she nevertheless agreed to plead guilty, and therefore, she waived as a matter of law any issues associated with the alleged illegal search and seizure about which she complains.  She certainly could have persisted in her plea of not guilty and presented the search and seizure as a defense to the charges.  She chose instead to plead guilty and as previously found, there is nothing in the colloquy remotely suggesting that she did not plead knowingly, freely, and voluntarily.

      4.        "Ineffective counsel."

      In this claim, Defendant charges that counsel acted ineffectively when he (1) refused to secure the original consent forms for her review (even though "the signatures has always been undisputedly that of Ms. Hayes"), (2) failed to have the consent forms "examined for fraud" or to file a motion to suppress, (3) withdrew the motion to withdraw guilty plea without notifying Defendant, and (4) failed to advise her "of all my appealable options" (even though counsel informed her that she "could appeal within ten days").  Doc. 77.  She claims that although she "stated in open court that all issues was resolved with Mr. Lammers, [she] was under the

presumption by Mr. Lammers would continue to have the [consent] documents examined." *Id*.

Consideration of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for

determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

The two-part *Strickland* test is "applicable to ineffective-assistance claims arising out of

the plea process," the only difference being that in the context of a plea, the prejudice

requirement "focuses on whether counsel's constitutionally ineffective performance affected the

outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "[T]he decision

whether to plead guilty (i.e., waive trial) rest[s] with the defendant, and...counsel's

advice...might have caused the defendant to forfeit a judicial proceeding to which he was

otherwise entitled." *Roe*, 528 U.S. at 485. "In other words, in order to satisfy the 'prejudice'

requirement, the defendant must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill*, 474 U.S. at 59.

Finally, the Eleventh Circuit has recognized that given the principles and presumptions

set forth above, "the cases in which habeas petitioners can properly prevail...are few and far

between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the

best lawyers would have done or even what most good lawyers would have done, but rather

whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.

*Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

None of Defendant's claims have merit. By pleading guilty, Defendant waived any and

all issues related to the consent forms and the legality of the searches. Furthermore, she cannot

show how she was prejudiced by the failure of counsel immediately to secure the originals of the

forms when she admits "the signatures has always been undisputedly that of Ms. Hayes."

Indeed, the handwriting expert retained by Mr. Lammers concluded that "the evidence shows

conclusively that Robin Hayes...executed both 'Robin Hayes' signatures in question." Doc. 97,

Ex. 5. A motion to suppress the documents would therefore have been frivolous, and counsel is

never required by *Strickland* to file frivolous motions. Defendant does not explain what further

examination for fraud counsel should have done, and the Court does not engage in creating

scenarios of possible fraud that counsel should have investigated when no reasonable attorney

would have done any more than instant counsel did in connection with the consent forms.

   As to her allegation that counsel withdrew the motion to withdraw the guilty plea without

her consent, the allegation is baseless. According to Mr. Lammers' letter, Defendant agreed that

withdrawal of the motion was appropriate "if [she] could see the original [consent] documents."

Doc. 97, Ex. 6. Because the Government had agreed that Defendant could see the original

documents, he filed the motion preemptively because the hearing on the motion had already been

scheduled and it was in Defendant's best interests to bring the withdrawal to the Court's

attention so that it would not rule adversely to her on the motion in the interim. *Id.* As Mr.

Lammers advised Defendant, an adverse ruling would have subjected Defendant to a loss of

acceptance of responsibility points under the Sentencing Guidelines. *Id.* In any event, counsel

did not act deficiently in accepting the Government's representation that it would produce the

original documents and filing the withdrawal notice based on those representations and

Defendant's statements to him in that regard. At any time, the Court could have ruled on the

motion to withdraw without hearing even though it had scheduled a hearing on the matter.

Motions to withdraw are routinely handled in federal court on paper without the benefit of oral

argument, and waiting an additional period of time before advising the Court of his client's

intentions increased the risk that the Court would overrule the motion before the hearing date. Indeed, the likelihood of success on the motion was minimal, as motions to withdraw are not favored after a defendant has advised the Court under oath that she is in fact guilty. Mr. Lammers is the attorney, and it was his duty to protect Defendant's interests as he saw fit, as long as his decisions were reasonable. A preemptive notice under the circumstances was reasonable.

Finally, the Court turns to Defendant's allegations that counsel did not discuss with Defendant "all...appealable options." The framework for analyzing an ineffective assistance of counsel claim for failure to file a notice of appeal is set forth in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Without dispute, it has long been the law "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477. "This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id*. "At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id*. at 477 (emphasis in original). If the defendant did not clearly convey his wishes one way or the other after counsel "consulted" with the defendant about an appeal, *i.e.*, counsel advised the defendant "about the advantages and disadvantages of taking an appeal, and [made] a reasonable effort to discover the defendant's wishes," counsel performs unreasonably only by disregarding the defendant's express instructions to appeal. *Id*. at 478.

If counsel has not consulted with the defendant about an appeal, then the court reviews whether the failure to do so constitutes deficient performance. *Id.* Where there is reason to

believe either that a rational defendant would want to appeal, or that the particular defendant

expressed an interest in appealing, then counsel's performance is deficient if he fails to consult

with the defendant about an appeal. *Id.* at 480.

 Even if deficient performance is shown, the defendant must show that the deficient

performance caused the forfeiture of his appeal. *Id.* at 484. In that regard, he must demonstrate

"a reasonable probability that, but for counsel's deficient failure to consult with him about an

appeal, he would have timely appealed." *Id*. at 484. "To prove deficient performance, a

defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an

appeal. But such evidence is insufficient to establish that, had the defendant received reasonable

advice from counsel about the appeal, he would have instructed his counsel to file an appeal."

*Id.* at 486.

 With these guidelines in mind, the Court finds that her claim is meritless. Without

dispute, counsel met with Defendant after sentencing and "discussed [her] right of appeal and

possible legal issues that could be raised." Doc. 97, Ex. 10. Both the Court and counsel advised

Defendant that she had ten days to appeal the judgment, and Defendant indisputably told counsel

that she did not want to appeal. *Id*. Mr. Lammers advised Defendant that if she changed her

mind, she was to contact the Clerk of Court and him "immediately." *Id*. Defendant does not

deny counsel's representations in this letter, a letter which she obviously received since she

submitted it for the Court's consideration in this proceeding. Therefore, because she plainly told

Mr. Lammers that she did not want to appeal, Defendant cannot now complain that "by

following [her] instructions, [her] counsel performed deficiently." *Flores-Ortega*, 528 U.S. at

477. Since an attorney is not required to pursue frivolous, baseless, or weak arguments on

appeal, *see*, *e.g.*, *Johnson v. Alabama*, 256 F.3d 1156, 1187-88 (11th Cir. 2001), there is no requirement that an attorney discuss with a client any and all possible appealable issues which might be available.   It is clear from counsel's undisputed letter that he consulted with Defendant about an appeal, that she instructed him not to file one, and that counsel followed his client's instructions.  He therefore did not render ineffective assistance by failing to discuss with her some amorphous, possible issues for appeal.

## CONCLUSION

In short, Defendant's claims in this proceeding are either foreclosed because she freely and voluntarily pled guilty to the charges or are without merit.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, Doc. 77, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 31st day of August, 2009.


s/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**